Case 7:17-cv-09459-CS Document 39 Filed 10/12/18 Page 1 of 12

# OTTINGER
## EMPLOYMENT LAWYERS

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street
San Francisco, CA 94105
(415) 262-0096

OTTINGERLAW.COM

Robert W. Ottinger
Direct: (917) 566-2037
robert@ottingerlaw.com

October 12, 2018

**BY ECF ONLY**

The Hon. Judge Cathy Seibel
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 0007-1312

I would approve the settlement agreement but for one thing. Paragraph 2 appropriately limits the claims Plaintiff is releasing to wage and hour claims. But paragraph 5 seems to waive Plaintiff's right to receive money in connection with any sort of agency charge or investigation, which could go beyond wage-and-hour claims. While I do not rule out that Plaintiff could release claims beyond wage-and-hour claims, such releases should be mutual. If I am misconstruing the agreement, the parties may send a letter explaining it. If not, they may resubmit the agreement with amended language or may let me know if under paragraph 13 they wish me to modify paragraph 5.
They should do one or the other no later than 10/22/18.

Re: Case No.: 7:17-cv-09459 (CS) *Teresa Fuentes Diaz v. Steps*

SO ORDERED.

*[signature]*

CATHY SEIBEL, U.S.D.J.

Dear Judge Seibel:

The Ottinger Firm, P.C. (the "Firm") represents Plaintiff Teresa Fuentes
the above-referenced action. Plaintiff submits this letter, which Defendan
support of Final Approval of the proposed Settlement.

## I.    INTRODUCTION

10/12/18

The above captioned action was initiated by Plaintiff on December 1, 2017. Ultimately, Plaintiff filed a Second Amended Complaint alleging the following causes of action: Fair Labor Standards Act ("FLSA"), Unpaid Minimum Wage; FLSA, Failure to Pay Overtime Compensation; New York Labor Law ("NYLL"), Unpaid Minimum Wage; NYLL, Failure to Pay Overtime Compensation; 12 N.Y.C.R.R. § 142-2.4, Spread of Hours; and NYLL, Failure to Furnish Wage Statements. (ECF No. 24.)

Plaintiff respectfully requests this Court find the proposed Settlement of Plaintiff's Wage and Hour claims as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.* and *Wolinksy v. Scholastic Inc.*

## II.    THE PROPOSED SETTLEMENT IS REASONABLE UNDER *CHEEKS* AND *WOLINKSY*

When parties privately settle FLSA claims with prejudice, the settlement must be approved by a district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016). To warrant approval, "the parties

50687458v.1

Page 2 of 6

must satisfy the court that their agreement is 'fair and reasonable.'" *Flores v. Food Express Rego Park, In*c., 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016).

Under *Wolinsky*, the first step in the analysis is considering the parties' agreement with respect to the various factors set forth by that Court, including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). These factors should be considered in light of the totality of the circumstances. *Id.*

Other considerations that might militate against approval include: (1) the presence of other employees similarly situated to the claimant; (2) a likelihood that the circumstances will recur; (3) a history of non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue in dispute. *See id.*

### A. Plaintiffs' Range of Possible Recovery Supports Settlement Approval

Defendant has taken the position that under the FLSA an employer need not pay employees assigned to a 24-hour (or longer) shift for time spent sleeping (up to 8 hours) and for meal periods (up to 3 hours), if certain conditions are met. *See* 29 C.F.R. 785.22(a). Plaintiff disputes Defendant's positions but acknowledges that Defendant has raised arguments it believes it will be able to rely upon in establishing key elements of 29 C.F.R. 785.22(2). Plaintiff's FLSA claims in this case, however, do not require this Court to determine the validity of the Defendant's legal argument that the exclusion of up to 8 hours of sleep time and 3 hours of meal time is proper under all of the applicable laws, rules and regulations. Plaintiff's case also rests on her ability to demonstrate that she did not actually receive adequate sleep or meal breaks in any given 24-hour shift. Defendant contends, and Plaintiff acknowledges, that she has an uphill battle in this regard. Plaintiff acknowledges Defendant could prevail on the FLSA claims wholesale.

Moreover, the NYLL on this issue is uncertain. In addition to Plaintiff's claims that she was not actually provided the required sleep time and meal time under the FLSA, Plaintiff's state law claims are based upon a theory that is currently being contested throughout the New York home healthcare industry, and which is pending before the New York State Court of Appeals. The question before the Court of Appeals is whether a non-residential in-home care attendant must be paid for each hour of a 24-hour shift, including sleep and meal periods (as Plaintiff contends); or, whether, (as Defendant contends) non-residential in-home care attendants need only be paid for hours worked, and not for sleep and meal periods. The parties have differing opinions as to how the Court of Appeals will rule, but Plaintiff acknowledges it is possible the Court of Appeals will rule in Defendant's favor.

Plaintiff also acknowledges this District has previously held that the NYDOL Opinion advising that it is proper to exclude meal and sleep periods from compensable time when a home health

Page 3 of 6

aide is assigned to a 24-hour shift, deserves deference.  *See Carrasco v. Life Care Services, Inc.* 2017 WL 6403521, at *9 (S.D.N.Y. 2017).

Plaintiff's possible range of recovery, therefore, ranges from no recovery at all ($0.00) to, what Plaintiff calculates to be at most, 11-hours of pay ($10.77 weighted hourly rate times 11 hours equals $118.47 per shift), for every shift worked (774 shifts), while employed by the Defendant ($91,695.78); not inclusive of liquidated or statutory penalties.  Defendant does not agree with the foregoing damages calculation, and believes that Plaintiff's estimate is overstated.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *In re Austrian & German Bank*, 80 F. Supp. 2d 164, 178 (S.D.N.Y. 2000).  "Instead, 'there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.*  (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  The Proposed Wage and Hour Settlement of $4,978.84 represents an appropriate portion of Plaintiff's damages when taking into consideration all of the facts and arguments raised by both sides in this litigation.[1]

Given the risks facing Plaintiff in this District, the uncertainty of the law, the potential negative outcome in the case currently before the New York State Court of Appeals, and the difficulty of demonstrating that Plaintiff never received adequate meal or sleep periods, this factor weighs in favor of approving the $4,978.84 Wage and Hour Settlement.  *See Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 WL 6594226, at *2 (S.D.N.Y. Dec. 21, 2017) (approving settlement without specific analysis of potential recovery percentage, holding "[i]f a jury were to accept all the allegations in the Complaint as true, the proposed settlement would likely be a very small percentage of Plaintiff's potential recovery at trial.  Even so, under the circumstances of this case, the amount is fair and reasonable.  In the absence of a settlement, Plaintiff would face serious 'legal and evidentiary challenges.'").

### B.  Plaintiffs' Avoidance of Their Burden to Establish Their Respective Claims and The Seriousness of the Litigation Risks Support Settlement Approval

The Settlement is reasonable given the considerable risks Plaintiff faces in establishing, on a day by day basis, whether she received adequate meal and rest breaks and/or sleeping periods.  Further, Plaintiff face significant obstacles in demonstrating the NYDOL Opinion Letter, discussed above, is not entitled to deference.  *See Rodriguez v. Avondale Care Grp., LLC*, No. 16-CV-03084 (SN), 2018 WL 1582433, at *5 (S.D.N.Y. Mar. 27, 2018) ("the Court concludes that the Court of Appeals is unlikely to follow the *Tokhtaman* line of cases"); *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 417 (S.D.N.Y. 2018) (court is compelled "to hold that the Court of Appeals would not follow the reasoning of the Appellate Division[s] in *Tokhtaman*, *Andryeyeva*, and *Moreno*, and would instead defer to the NYDOL's long-standing interpretation of 12 N.Y.C.R.R. § 142–

---

[1] Notwithstanding this settlement, Defendant denies any and all liability to Plaintiff, whatsoever.

Page 4 of 6

2.1(b)—recently codified in an emergency regulation—to permit employers of home health care aides to deduct 11 hours from the count of compensable hours in a 24–hour shift provided that the aide is given eight hours to sleep, actually receives five uninterrupted hours of sleep, and receives three hours of breaks for meals").

In light of the significant litigation risks Plaintiff faces in prosecuting this case, the Wage and Hour Settlement's terms weigh in favor of approving the Wage and Hour Settlement as fair and reasonable. This factor, therefore, weighs in favor of approving the settlement.

### C. Resolution of This Action at This Stage of the Litigation and on the Basis of Arm's-Length Bargaining Between Counsel with the Assistance of an Experienced Mediator without Fraud or Collusion Supports Settlement Approval

The parties' Wage and Hour Settlement is the product of protracted arm's-length bargaining between experienced counsel and is absent of any fraud or collusion. The proposed Settlement was reached with the assistance of an experienced, neutral mediator. The proposed Settlement avoids the unnecessary costs and difficulties of further litigation. Additional discovery and/or motion practice is unlikely to provide any addition detail useful to the parties because the parties engaged in substantial informal discovery as part of the mediation process. This factor therefore weighs in favor of approving the settlement.

### D. Review of the Negative *Wolinsky* Factors Also Supports Settlement Approval

*Wolinsky* also examines factors that mitigate against approval. These factors include (1) the presence of other employees similarly situated to the claimant; (2) a likelihood that the circumstances will recur; (3) a history of non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue in dispute.

The negative *Wolinsky* Factors do not support rejecting the proposed Wage and Hour Settlement. While there are other employees similarly situated to Plaintiff, the proposed Wage and Hour Settlement in this case will not dispose of or interfere with the New York State Class Action lawsuit currently pending against Defendant about which this Court received briefing from both sides highlighting the existence of overlapping claims (*i.e.*, *Shamara White v. Steps In Home Care Inc.*, Index No. 157440) (*See* ECF Nos. 13 - 15). The likelihood of these circumstances recurring is further mitigated by what is likely to be a definitive ruling by the New York Court of Appeals finally resolving this hotly debated issue. Plaintiff and Defendant affirm Steps In Home Care, Inc. has neither violated a previous court order addressing Wage and Hour issue nor has it been the subject of a previous Wage and Hour court order. The parties jointly state they are not aware of any reason a more mature record is desirable.

50687458v.1

Page 5 of 6

**E. Plaintiffs' Counsel's Request for Attorneys' Fees Equal to One-Third of the Wage and Hour Settlement Amount Is Reasonable and Supports Wage and Hour Settlement Approval**

The Firm is requesting attorneys' fees equal to one-third of the Wage and Hour Settlement, or $1,659.61. The amount requested is inclusive of reimbursement of litigation costs incurred by the Firm in prosecuting and successfully resolving this litigation. *See* Wage and Hour Settlement Agreement, ¶ 7.

There are two ways to compensate attorneys for successful prosecution of statutory claims: the lodestar method and the percentage of the fund method. *See McDaniel v. County. Of Schenectady*, 595 F. 3d 411, 417 (2d Cir. 2010). Courts tend to prefer the percentage method over the lodestar method to compensate attorneys for successful prosecution of statutory claims, because the percent method is closely aligned with market practices and "is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." *Chavarria v. New York Airport Service, LLC*, 875 F. Supp. 2d 164, 177 (E.D.N.Y 2012). The percentage method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013); *see also Costagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending the plaintiffs' attorneys for negotiating early settlement). Moreover, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.*, No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999).)

Plaintiff's Counsel's fees are also consistent with the retainer agreement entered into by named Plaintiff Diaz, which provides for counsel to receive one-third of any recovery. *See Garcia*, 2012 WL 5305694, at *8 (the court states that "reasonable, paying clients typically pay one-third of their recoveries under private retainer agreements" as support for approving class counsel's request for one-third of the settlement fund) (internal quotation marks and citation omitted); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving as reasonable a negotiated fee of one-third of the settlement amount, plus costs, in accordance with the retainer agreement); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at *2-3 (E.D.N.Y. Nov. 21, 2014) (awarding one-third contingency fees as it was "consistent with [the] Plaintiffs' retainer agreement with counsel and with the consent to sue form signed by all [of the] Plaintiffs") (internal quotation marks and citations omitted).

The Firm has worked a total of approximately 156.14 hours on this matter as of the date of this submission. Due to the experience of its attorneys in representing workers in litigation of this type, the Firm utilizes a small team of attorneys and support personnel to minimize duplication of efforts and maximize efficiency and billing judgment.

Page 6 of 6

The Firm ordinarily and regularly bills legal time on an hourly fee basis using Harvest's real world, contemporaneous time tracking system at the Firm's attorney rate and paralegal rate. The Firm's standard attorney rate is $550 an hour, and the Firm's paralegal rate is $250 an hour. For the purpose of this application the Firm has reduced the rates of Mr. Weisenberg and Ms. Sanders. The following chart summaries the time spent on this matter by each Firm team member:

| INDIVIDUAL, POSITION | TOTAL HOURS | RATE/HR | FEES |
|---|---|---|---|
| Benjamin Weisenberg, Associate | 39.07 | $450 | $17,581.00 |
| Erica Sanders, Associate | 54.39 | $400 | $21,756.00 |
| Kathryn Daly, Paralegal | 0.44 | $250 | $110.00 |
| Daniel Strellman, Paralegal | 6.38 | $250 | $1,595.00 |
| Jose Caceres, Paralegal | 17.62 | $250 | $4,405.00 |
| Anna Odoi, Paralegal | 38.24 | $250 | $9,560.00 |
| | | TOTAL FEES | $55,000.07 |

The Ottinger Firm's recovery of one-third of the proposed Wage and Hour Settlement is extremely fair and reasonable under this Circuit's preferred percentage method.

\*     \*     \*

**Plaintiff, therefore, respectfully requests that this Court approve the proposed Wage and Hour Settlement as fair and reasonable pursuant to the standards of this Court and the Circuit under which this Court sits.**

Dated: October 12, 2018

Respectfully submitted on behalf of the Parties,

**THE OTTINGER FIRM, P.C.**

_____

Benjamin D. Weisenberg
benjamin@ottingerlaw.com

50687458v.1

## SETTLEMENT AGREEMENT AND RELEASE OF WAGE AND HOUR CLAIMS

This Settlement Agreement and Release of Wage and Hour Claims (the "Agreement") is made and entered into by and between Teresa Fuentes Diaz ("Plaintiff"), individually on behalf of herself, and Steps in Home Care, Inc. ("Defendant"). Plaintiff and Defendant are collectively referred to as the "Parties."

WHEREAS, Plaintiff filed a lawsuit against Defendant titled *Teresa Fuentes Diaz, individually and on behalf of all others similarly-situated against Steps in Home Care, Inc.*, No. 18-CV-09459-CS, in the United States District Court for the Southern District of New York on December 1, 2017;

WHEREAS, Plaintiff filed a first amended complaint on December 7, 2017;

WHEREAS, the Parties attended mediation on February 13, 2018 and April 13, 2018;

WHEREAS, Plaintiff filed a second amended complaint on June 29, 2018, retitling the matter as *Teresa Fuentes Diaz v. Steps in Home Care, Inc.*, and dismissing all putative class and collective action claims;

WHEREAS, in the Lawsuit, Plaintiff asserts various claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for purported minimum wage, unpaid overtime and other wage/wage payment related claims (the "Lawsuit");

WHEREAS, Defendant denies all of Plaintiff's allegations and claims in the Lawsuit; however, to avoid the costs of protracted litigation, including the associated legal costs and expenses, the Parties desire to resolve the claims Plaintiff has brought against Defendant in the Lawsuit; and

WHEREAS, the Parties enter into this Agreement to effect a full and final settlement and dismissal with prejudice of all claims Plaintiff brought against Defendant in the Lawsuit, which were or could have been pleaded in the Complaint, and/or claims related thereto. This Agreement is intended fully and finally to compromise, resolve, discharge and settle the Lawsuit, as reflected herein, subject to the approval of the Court.

NOW, THEREFORE, in consideration of the mutual covenants and promises each Party has made to the other as set forth in this Agreement, the Parties agree as follows:

1. **Dismissal Of The Lawsuit.** The Parties agree to, on or before September 26, 2018, seek an order approving the terms of this Agreement and dismissing with prejudice the Lawsuit by Plaintiff's filing of an unopposed motion for approval of the settlement agreement and dismissal of the lawsuit with the United States District Court for the Southern District of New York.

2. **Waiver and Release Of All Wage And Hour Claims.** In exchange for the consideration described in Paragraph 7, Plaintiff irrevocably and unconditionally waives, releases, and forever discharges Defendant and its predecessors and successors in interest, and all

Doc ID: 4ba8fa87a344035db6ae92d5d22cb121b8e214d4

current, former and future related organizations, companies, divisions, subsidiaries, affiliates, and corporate parents, and, collectively, their respective former, current and future stock holders, owners, shareholders, directors, officers, employees, agents, representatives, attorneys, contractors, fiduciaries, assigns, heirs, executors, administrators, beneficiaries, insurers and trustees (collectively the "Released Parties"), from any and all claims, charges, complaints, actions, causes of action, grievances, controversies, disputes, demands, agreements, contracts, covenants, promises, liabilities, judgments, obligations, debts, damages (including, but not limited to, actual, compensatory, punitive, and liquidated damages), attorneys' fees, costs, and/or any other liabilities of any kind, nature, description, or character whatsoever, asserted in or that could have been asserted against any of the Released Parties in the Lawsuit under the Fair Labor Standards Act, New York Labor Law, and any other federal, state, local, or common law involving the payment of wages. This release includes, but is not limited to, claims for unpaid or untimely paid wages or other forms of compensation, including but not limited to, claims asserted under any legal theory or statute for misclassification, failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to pay a split shift premium, failure to pay spread of hours premium, failure to timely pay wages, failure to pay final wages, failure to furnish accurate wage statements or other notices, failure to keep accurate records and/or violation of the anti-retaliation provisions of the FLSA, NYLL or other law with respect to claims that were or that could have been asserted in the Lawsuit (the "Released Claims"). The Released Claims include, but are not limited to, any and all claims for damages, liquidated damages, statutory damages, interest, penalties, costs, attorneys' fees, equitable relief, or any other types of available recovery relating to any of the Released Claims.

3.    **Covenant Not To Sue.** Plaintiff agrees not to sue any or all of the Released Parties in any forum for any claim covered by the waiver and release in Paragraph 2, except that Plaintiff may bring a claim to enforce this Agreement. Plaintiff also agrees not to participate in any class or collective action against any or all of the Released Parties for any claim covered by the waiver and release in Paragraph 2 and agrees that she will elect to opt out of any lawsuit or action against any of the Released Parties pertaining to any of the Released Claims, of which she is involuntarily made a member or participant. If Plaintiff violates this Agreement by suing the Released Parties, other than to enforce this Agreement, Plaintiff shall be liable to such Released Parties as parties to the lawsuit for their reasonable attorneys' fees and other litigation costs incurred in defending against such a lawsuit. Alternatively, if Plaintiff sues the Released Parties, other than to enforce this Agreement, Plaintiff may be required, at Defendant's option, to return all but One Hundred Dollars and Zero Cents ($100.00) of the consideration paid to her pursuant to this Agreement.

4.    **No Pending Actions.** Plaintiff represents that other than the Lawsuit, she has not filed any other claims or causes of action in any form or forum against the Released Parties based on any of the Released Claims.

5.    **Rights and Claims Excluded From Waivers And Releases.** This Agreement does not waive any rights that cannot be waived by law, including Plaintiff's right to file a charge with an administrative agency and her right to participate in any agency investigation or proceeding. Plaintiff is waiving, however, any right to recover money in connection with such a charge or investigation except money properly awarded by the Securities Exchange Commission.

Doc ID: 4ba8fa87a344035db6ae92d5d22cb121b8e214d4

Plaintiff also is waiving any right to recover money in connection with a charge filed by any other individual or governmental agency regarding any Released Claims.

6.   **Non-Admission Of Liability.**   Plaintiff agrees that Defendant does not admit any allegations made against it in the Lawsuit, and rather expressly denies all such allegations. Specifically, Defendant denies that it has: violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable law, regulation or legal requirement; breached any contract; violated or breached any duty; or engaged in any other unlawful conduct with respect to its employees or any other person or entity. Plaintiff agrees that neither this Agreement, nor any of its terms or provisions, nor any of the negotiations connected with it or proceedings, payouts or other events associated with it, shall be construed as an admission or concession by Defendant of any such violation(s) or failure(s) to comply with any applicable law by Defendant or any Released Parties.

7.   **Payments.**   In exchange for the promises made by and in consideration for all the terms agreed to by Plaintiff in this Agreement, Defendant agrees to pay the gross settlement sum of Six Thousand Six Hundred Thirty Eight Dollars and Forty-Five Cents ($6,638.45) within twenty-one (21) days after the Court approves this Agreement and has dismissed the Lawsuit with prejudice, on the condition that Plaintiff and Plaintiff's counsel, The Ottinger Firm, P.C., complete, execute, and submit to Defendant's counsel the required tax documentation as noted below.

This payment shall be apportioned as follows:

(a)   Two checks made payable to Teresa Fuentes Diaz in the total amount of Four Thousand Nine Hundred Seventy-Eight Dollars and Eighty-Four Cents ($4,978.84) for her wage claims asserted in the Lawsuit, including minimum wage, overtime, failure to pay spread of hours premium, and failure to furnish accurate wage statement claims in the Lawsuit, fifty percent of which shall be treated as payment for Plaintiff's alleged unpaid wages, and fifty percent of which shall be treated as payment for Plaintiff's alleged liquidated damages, penalties, and interest; and

(b)   A check made payable to The Ottinger Firm, P.C. in the amount of One Thousand Six Hundred Fifty Nine Dollars and Sixty-One Cents ($1,659.61), in full satisfaction for attorneys' fees and costs for Diaz's wage and hour claims as outlined in this Agreement.

Plaintiff agrees to provide Defendant with completed IRS Forms W-4 and W-9 as a condition precedent to receiving payment under this Agreement. Plaintiff agrees to provide Defendant with a completed IRS Form W-9 for The Ottinger Firm, P.C. as a condition precedent to receiving payment under this Agreement.

8.   **Tax Treatment.**   Plaintiff further agrees that:

(a)   Applicable statutory deductions, including federal and any applicable state income taxes and Social Security taxes, shall be withheld by Defendant from the

- 3 -

Doc ID: 4ba8fa87a344035db6ae92d5d22cb121b8e214d4

sum treated as payment for Plaintiff's alleged unpaid wages, and Defendant shall issue an IRS Form W-2 to Plaintiff in connection with the payment of this sum;

(b)     Defendant shall issue a Form 1099 to Plaintiff in connection with the payments for her alleged liquidated damages, penalties, and interest;

(c)     Defendant shall issue a Form 1099 to both Plaintiff and her attorneys in connection with the payment made to The Ottinger Firm, P.C. for attorneys' fees and expenses; and

(d)     In the event the Internal Revenue Service, or any other state or local taxing entity, or any court or other tribunal of competent jurisdiction, determines that all or part of these payments are remuneration for which any taxes are due and owing by the Defendant, Plaintiff shall be solely responsible for the payment of such taxes. Plaintiff also agrees to indemnify Defendant for any amounts that Defendant may be required to pay with respect to taxes on payments to Plaintiff, including, but not limited to, interest and penalties, in connection with any taxes that Plaintiff may owe based on this payment.

9.     **Other Agreements By Plaintiff.** Plaintiff also agrees that:

(a)     She is entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Plaintiff has not been coerced, threatened, or intimidated into signing this Agreement;

(b)     Plaintiff has been advised to consult with, and has in fact consulted with, her lawyers at The Ottinger Firm, P.C. prior to signing this Agreement;

(c)     Plaintiff is not entitled to any consideration from Defendant in exchange for the promises made in Paragraph 2 other than the consideration described in Paragraph 7;

(d)     Plaintiff is waiving her right to participate in any class or collective action against Defendant and/or the other Released Parties regarding any of the Released Claims; and

(e)     Plaintiff understands all terms in the Agreement. To the extent a translation was necessary, Plaintiff has requested a translation from The Ottinger Firm, P.C. and one has been provided.

10.     **Applicable Law.** This Agreement shall be interpreted under the laws of the State of New York without regard to its choice of law provisions.

11.     **Counterparts.** This Agreement may be executed in counterparts, and each executed counterpart shall have the same force and effect as an original instrument, as if all of the parties to all of the counterparts had signed the same instrument. E-mailed or faxed copies of signatures shall be considered the equivalent of an original signature.

Doc ID: 4ba8fa87a344035db6ae92d5d22cb121b8e214d4

12.     **No Oral Modification.** No amendment or modification of the terms of this Agreement shall be binding on the Parties unless reduced to writing and signed by Plaintiff and Defendant.

13.     **Severability.** The Parties agree that if any phrase, clause, or provision of this Agreement is declared to be illegal, invalid or unenforceable by a court of competent jurisdiction, such phrase, clause or provision shall be deemed severed from this Agreement, but will not affect any other provisions of this Agreement, which shall otherwise remain in full force and effect. If any phrase, clause, or provision in this Agreement is deemed to be unreasonable, onerous, or unduly restrictive by a court of competent jurisdiction, it shall not be stricken in its entirety and held totally void and unenforceable, but shall remain effective to the maximum extent permissible within reasonable bounds. If any waiver, release, or covenant not to sue set forth in Paragraphs 2 or 3 is deemed to be illegal, invalid, or unenforceable in whole or in part, Defendant's obligations under this Agreement shall be nullified.

**[SIGNATURES ON THE NEXT PAGE]**

Doc ID: 4ba8fa87a344035db6ae92d5d22cb121b8e214d4

_____     Date: 09/22/2018
Teresa Fuentes Diaz

As to Paragraph 9(e), The Ottinger Firm, P.C.

By: _____     Date: 9/25/18

Title: _____

Steps in Home Care, Inc.

By: Nishan Wade _____     Date: 9/17/18

Title: President _____

- 6 -

Doc ID: 4ba8fa87a344035db6ae92d5d22cb121b8e214d4